The next matter for oral argument this morning is FTC v. Shire Viropharma. Mr. Hoffman. Good morning, Your Honors. May it please the Court, Matthew Hoffman for the FTC. I'd like to reserve three minutes for a bubble. That's granted. And of course, counsel all know that we have asked that you first address the question of jurisdiction before we move on. Sure. So let me let me turn to that question right up right off the bat. The courts asked that question. This is 13b is not jurisdictional. The Supreme Court established a bright line test in the Arbaugh case. That's five forty six U.S. five hundred two thousand six, which says that unless Congress clearly states that that's really the case is jurisdictional, a court should treat jurisdiction as non-jurisdictional in character. So in this case, there's nothing in Section 13b that indicates that Congress intended the standard to be jurisdictional. The court has jurisdiction under Section 1331, 28 U.S.C. Section 1331, Section 1337A and Section 1345. So it's not. And would you agree that the district court opinion was a bit obscure in indicating explicitly whether it was ruling under B1 or B6? Yeah, I would agree that the district court opinion is unclear on that. And I think the appellate's brief is also unclear on that question. Although I would say that because the district court went on. It's not at least if it's not unclear, it's counter to your position on jurisdiction. But it would seem odd that the court was ruling that it lacked jurisdiction. But then they've gone to address the Newark-Pennington issue. Absolutely. I mean, certainly if the court believed it lacked jurisdiction, it should not have addressed the Newark-Pennington issue. So we interpret that as the court did not view this as a jurisdictional issue. Although it did say that it did seem to indicate that the is or is about to is sort of a jurisdictional prerequisite for the SEC to get into court. And we believe that's an error. You know, federal courts of appeals have been construing that is or is about to language for 80 years going back to the SEC cases. And they've always understood it to require only a reasonable likelihood of recurrence to warrant an injunction. Those decisions were on the books long before 13B was enacted. And Congress would have expected the new statute to be applied the same way as, in fact, it has been. And if this court were to adopt a different reading now, that would seriously disrupt enforcement, not just of the FTC Act, but also the securities laws and many other injunctive relief statutes that use the same is or is about to formulation. Just going back to the jurisdictional question. Why should we look to the SEC statutes? Their purpose is entirely different from the purpose of this statute. And my recollection is that as a canon of construction, we really do need where the same language is used to look to a statutory framework that parallels or is related to that which is at hand, not some other area of the law. My response is they serve the exact same purpose, which is to authorize courts to issue injunctive relief. Well, it depends on how broadly then you're going to construe the same purpose. But let's home in on the is or is about to language here of 13B. The FTC waited, what, five years to bring this proceeding? Is that a correct statement? I wouldn't use the term waited five years, but it was brought. How would you characterize the delay? So what happened in this case is the FTC didn't learn of the misconduct until it was towards the end of it. And, of course, we couldn't. To the end of the misconduct? And, of course, we couldn't bring the action until the FTC. All right. Well, let's put that in actual numerical terms because I've been wondering about that exact point, which is to say what kind of channels of communication are there between these two agencies? What did the FTC know and when did it know it? But you said at the end of. When is that? And what's the period of time between then and the bringing of this proceeding under 13B? Yeah. I don't know the exact time that we learned of this. It's a rough estimate. Sorry? It runs it up to the nearest year. I mean, let's assume it's in the year before the decision was made. In any event, the lawsuit could not have been brought before the FDA resolved the petitions because once, you know, we needed to know how the FDA was going to rule to determine whether the petitions were, in fact, sham litigation. And, of course, once the FDA ruled, then the conduct was over. You're saying that's why you couldn't have sought an injunction? We couldn't have brought the case until the FDA ruled. We couldn't reasonably have assessed whether these were, in fact, sham petitions. Well, no, wait a minute. You couldn't? You're not suggesting, are you, that there's some rule that would have prohibited the FTC during the course of the administrative proceeding from taking some action under 13B if the FTC believed that there was some kind of wrongful conduct abusing the petition process? No, that's not what I'm suggesting. What I'm suggesting is, given the nature of the violation here, we could not have reasonably alleged that these petitions were sham until the FDA had ruled on them. I don't understand that because it seems to me that 13B is intent to do exactly that and that if they were doing what you're alleging they had been doing back when they were doing it, there'd be a course of conduct there that you could rely on to suggest that these petitions that they bring in one particular case, the petition before the agency was a sham petition, they've done this periodically during the course of trying to protect their own right to market this drug without competition. And we're convinced they're going to continue to do it unless you step in and stop it. Why couldn't you have done that before? Because if the FDA had determined that there was merit to the petition, then we wouldn't have had a sham litigation. So we didn't want to bring the case until the FDA had ruled, and I'm assuming here that we knew about this before the FDA issued its ruling, although not long before. In terms of what happened after the FDA ruled. All right. Let's spot you the argument you just made. Now let's look at the time frame between when the FDA ruled, and in fact if I recall the chronology here, the FDA denied the petition and perhaps some other matters filed by Shire or Biopharma and approved two generics like the same day or the next day. Well, the answer is certainly it takes time to investigate these things. I understand that. Let me try a third time, sir. What is this time span? So I'm trying to answer the question. It is a chronology that ought to be subject to some numerical response, which is what I've been trying to get at. Years, months, combinations thereof. I can't give you a numerical response like that. What I can tell you is that. Isn't it the fact that the FDA changed their rules in 2006? The FDA changed their rules in 2006 and made it easier to challenge these brand-name drugs by laboratory tests as opposed to the other tests. All right. So I guess my question, which may answer the questions going back and forth from my colleagues, was the FTC even involved in actions like this against pharmaceutical companies before 2011, 2012? I don't know the answer to that question. Well, I think that's a very important question. Are you asking were there other sham petitioning cases brought? That the FTC had brought. Or was this a new area of enforcement that the FTC stepped into at or about the time of this case? This case was the worst episode of sham petitioning that the FTC had come across. But that doesn't answer my question. And I don't believe there are other sham petitioning cases, but I would need to check that with the staff. The answer, however, and let me step back a minute. Because, I mean, I think you're very appropriately talking about the facts of this case. But keep in mind here that the issue in this case is about the legal standard for bringing a case for injunctive relief. And this is a statute that the FTC uses all the time. We are very much aware of that, counsel. So I think it's important not to. Excuse me. We are very much aware of that. And, in fact, I explicitly referenced is or is about to minutes ago. In trying to get to what that language means. And it seems to me that it is necessary in the context of this case to understand what the time frame was, what the delay was. For us to put some meaning to is about to for purposes of this case. And we're still waiting for an answer on the quantification of the time period. You're complaining about the use, the lack of the ability to use this tool going to get an injunction. But I think that the record shows that the FTC seldom used this tool when they didn't already have an enforcement proceeding ongoing. Until very recently, whether it be in the generic drug area or any drug area, any other area of your jurisdiction. Is that the case? That is certainly not the case. The FTC uses this tool constantly. It's our major enforcement tool. That's not what your website reports. It certainly is what our website reports. What's the site? I'll go to it right now. www.ftc.gov. I mean, we certainly. What's the URL? The website indicates that we use 13B. And I can tell you that we use 13B all the time in all manner of cases. More commonly in unfair competition. In Section 5 cases. More commonly in cases involving unfair and deceptive. Exactly. But you haven't used it with any regularity until recently in Section 13B cases. Well, we have used it in Section 13B cases, including, for example, the activist case that went to the Supreme Court. Recently. Recently, yes. But it certainly has been used more commonly in the unfair and deceptive action practices. Exactly. A different standard. Well, it's the same statute, Your Honor. Different statute. Same statute. Same statute. Same Section 5, same Section 13. So, I mean, if it applies to one, it should apply to the other. There's no reason why it shouldn't apply equally in both cases. My understanding from the briefing is they really don't have any other drugs in the pipeline that are up for loss of protection in the relatively near future. And by that, let's say a year or two. Is that incorrect? They do have drugs that are not protected that are going to be subject? Of course, in this industry, first of all, you know, we haven't had a chance to take discovery, so we don't know that. Well, if you don't know that, how do you know there's a, I'm trying to, I'm fishing for standing. How do you know there's any injury here if you don't even know whether or not they've got any drugs? Well, we, I mean, we applied the test that this court used in Monastia, which looks at the severity of the past conduct, whether the company is. That's all you have been talking about. I reread that entire 57 page complaint over the weekend. And there is a long litany, which I don't question about the history of. I don't know whether it's pronounced Van Cosen or vacancy, but nothing that helps me understand just what it is that is about to occur. I can't forget. In fact, with respect to the about to your brief makes several references to the district court imposing a requirement of, quote, imminent illegal conduct. District court doesn't use that word anywhere in its opinion. I agree. The district court didn't use that word, although that's that's certainly our interpretation. But certainly the word that the appellants say is the standard. And that's our interpretation of what the district court said. The district court certainly said is that alleging a reasonable likelihood of recurrence is not enough. Now, if you think that we haven't alleged a reasonable likelihood of recurrence. I mean, you can't even tell us what the product is in there is in the pipeline here. Well, how would we ever infer or conclude that my answer to the question about what products are in the pipeline? We've identified at least one product. This is an industry where this is an industry where there's not close to coming off of protection. There's an industry. This is the industry. We don't know when. I mean, we don't know when generics will be filed. People can challenge things before patents, before patents expire. Of course, companies don't really know whether or not they have any product that they can file citizens petitions for. There may be all sorts of reasons why an injunction would not be appropriate here under a reason under under a reason. What are you alleged in your complaint? What are you alleged in your complaint? They're arguing the only thing you touch on in your complaint is program for 150 and 151 at the very end. And but for that, and that's kind of a vague allegation. You don't really allege anything to get you the kind of injury, be it imminent or anything else that would get you in the door. Well, again, the what we've alleged we think is consistent with the Banastia framework. What is it that you've alleged? You've alleged a repeated pattern of past violations of deliberate misconduct. A company that's still in the same business and thus has the same opportunities and incentives to all this misconduct is future. That is all history. It's recited in your complaint. But Judge McKee has referred to paragraphs 150 and 151. Absent injunction, there is a cognizable danger that viral pharma will engage in similar conduct, causing future harm to competition consumers. Similar conduct with respect to what product? What product? We don't know that viral pharma can go out and buy products tomorrow. But you want extraordinary relief like an injunction. We don't know, but you want it. We believe an injunction is just appropriate. How would we reward an injunction when we don't quite know what it is we're enjoying? We wouldn't be enjoying sham petitioning. Of what? With respect to any product marketed by by by viral pharma. And this is this is this is the type of relief that's very commonly awarded in securities cases. In fact, can you answer what what we would say if we were asked to enjoin? Yeah, I'm sorry. Can you suggest to us language or decretal provisions of an order if we were to issue an injunction? I think the question would be to say that you would issue an injunction in joining viral pharma from engaging in sham petitioning with respect to any pharmaceutical product. How would you define that? How I define sham petitioning? Yeah, I would define it by reference to the standard and professional real estate investors, which defines sham petitioning. Anything that's objectively baseless. I would probably put in requirements in the order requiring them to demonstrate, demonstrate that they can they can they can resolve that simply by going and getting a council. Would you include it to preclude them from going out to get citizen petitions from straw parties to get citizen petitions from straw parties? Yes. In other words, I mean, that's part of what happened here is they were getting citizen. They were in jail. They were they were they were getting people to file citizen petitions. Well, they filed their own citizens petitions in this case. The question is, is if they're if they're acting through an agent, I would say that's violating an injunction. But but obviously, you know, people if people are doing things on their own, then that's not that would not be violating the injunction. So, I mean, if the question is, could an injunction be issued here? Absolutely. An injunction could be issued. If the question is, is your answer here differ from the answer that counsel provided to the district court? So I recall from reading the record, there was some real difficulty in suggesting to the court at that time just what an injunction would say. Do you know what I'm referring to? I'd have to go back and look at the look at the transcript. My recollection is that one response was the injunction could say sin no more. Well, I don't think that's that different than what I just proposed. I mean, it's an injunction. It's got a more. You don't like the theological or what? Thinking about the establishment clause, an injunction that says don't violate the law might be overbroad. So I think the injunction would need to would need to be more narrowly tailored to the specific conduct issue here, which is sham petitioning. But let me go back to the question here. I mean, you know what? What I'm what I'm hearing from you is real concern over whether we've adequately alleged even a likelihood of recurrence. And, you know, if you think that we have a likelihood of recurrence, then, you know, that's you know, I would apply to a nasty standard, which which the court didn't apply here. And those factors should be applied in those in this case. The court here, the district court here, look to the actual language of the relevant statute. The question here, I think, does, whether it's said imminent or not, it does suggest some imminence, does it not? I mean, we are we are talking in the realm of temper. No, that's that's where I would disagree with you about to either. It's about you as it's been consistently applied, does not require imminence. Once a defendant has already violated the statute, every court. You're saying particularly in this case. I'm saying you're arguing you're arguing under the time period in this case that you can make that argument. Right. I'm saying under the facts of this case, we have alleged a reasonable likelihood of occurrence. All right. How long is to how long would too long be? It depends on the circumstances, Your Honor. It really it's a as Banaski has said, it's a totality of the circumstances test. There certainly are circumstances in which a court could say, based on what you've alleged, I don't think you've seen a reasonable likelihood of recurrence. The court would certainly say that, you know, if it were one violation 30 years later. Absolutely. You know, here we have a pattern of violations over a period of six years. We have all involving the same drug, all of the same drug. But of course, this is an industry where where companies only have a few different few different drugs. And their opportunities for doing this may be spaced out over a period of time. It doesn't make it even less likely to recur again. They only committed this conduct involving one drug that that fights over. That may be an issue that that may be an argument that could appropriately be made at the merit stage. But this is a motion to dismiss. And the question is, have we alleged facts? Have we alleged a reasonable likelihood of recurrence? We've alleged it and we've alleged facts that are at least as strong, if not stronger than the facts that were found to compel an injunction. We've been asked here. And again, you know, I we've we've we've cited the the you're well past your time at this point. And you have reserves reserved time. Mr. Hoffman. So how about if we all say that? Thank you, Your Honor. Thank you, Mr. Reed. Your honors, may it please the court, the court. Steve Reed from Morgan Lewis on behalf of the appellee. Let me start with a question that might show my ignorance. Why are we here? Don't get existential on because we think your honor. That's a question that I've asked. But if if you'd indulge me for a moment, I just learned about Judge Gibbons passing this morning on the way to court. And I just wanted to personally express my condolences to the court. It is a major loss. Thank you very much. Very happy to be here in order to answer your questions. I'm happy to jump right into the jurisdictional question because Judge McKee, I'm not sure how to answer your question. I think maybe the answer to your question, why are we here? Our is to focus on the issue that is presented in this program. One fifty one fifty one. And I'm just trying to get my maybe I'm wrong. My understanding is that your company at the current time only has one drug in development stage. It is kind of back in the weeds of the development stage. Not ready to get the point of either in vitro or in vivo trials. And there's nothing I don't want to use the word imminent. But there's nothing to suggest that any kind of past behavior that may well have been inappropriate and abusive. That drug is not at a point yet where that's sufficiently to keep coming back to standing. There's no nothing to suggest that the injury here is sufficient in terms of its likelihood of occurring in the near future. I won't say imminent to give rise to injunctive relief. Your Honor, I agree wholeheartedly. I mean, what you could and we briefed this. I think even if you were to adopt the FTC's preferred standard, which really goes to the whether a a injunction should be issued, not when an event is likely to occur again. And I want to get back to what I think this case is about, this appeal about, which is a fairly straightforward interpretation of statutory language that is plain and that is supported by statutory structure and legislative history. The question is not whether they can establish that an event is likely to occur. But what Congress told us in 13b is that time matters. They had that phrase about to and about to its plain meaning connotes some kind of imminence. Whether you want to use an imminence or on the verge of. Chief Judge Smith, I was happy to hear that you were a sailor. If you look at Black's Law Dictionary. Here we are. Black's Law Dictionary defines about to as on the verge of and uses the example of a ship that is about to sail. What we have here is a ship that's been in dry dock for now six, seven years. And it would be absurd to argue, I think, or for somebody to state that that ship was about to sail. I'm not a sailor, but I'm a football fan and a major Eagles fan. The Eagles won the Super Bowl last year and they still play football. But I don't know anybody who follows them would say that they're about to win the Super Bowl this year. It's just that. So I think we've lost sight of the definition of about to and long line of. Well, we're certainly dealing in the realm of the temporal. I don't see how anyone can dispute that. But I'm also not sure that this court can provide a great deal of guidance other than to rely upon district courts to look at all the circumstances that obtain. And then make a determination whether or not something is about to occur. That said, about to would certainly seem to suggest something near term. I assume you agree with that. I do. And I'm willing to allow that it could be context specific. So you might require something of much more eminence that happens very frequently than you would something that takes some time. But either way, about you can't read the temporal meaning of about to out of the statute. Again, this is first principles in statutory interpretation, which this Supreme Court applied many, many times. And this court's applied many times. You start and often stop with the plain meaning of the language the Congress chose. Here, Congress was very clear in its use of about to. There's no doubt that the plain meaning, if you look at the dictionary, that that has a temporal connotation. What you hear from the FTC, it's very interesting because they're not very direct on this. They don't say that about to is ambiguous. At least I didn't see it as I read through their briefs again. They don't say that it's ambiguous. They also don't offer an alternative interpretation of those words, of that phrase. They don't say, no, it doesn't mean on the verge. It means something that could happen in the next three years. What they do is they analogize it to the standard of proof that's applied for the request for an injunction. But again, that reasonably likely to occur goes to whether it will occur. It goes to the fact of the event, not the timing of the event. And again, I don't know how you read Congress's plain terms and walk away with any conclusion other than time matters. And there can be some debate and there may be future cases where the facts are a little bit more challenging for the defendant, where a district court can weigh what about to means in that context. But here, the FTC has expressly walked away from that debate. They have conceded that no violation is currently occurring. They have conceded that no violation is imminent. They put forward a standard that doesn't have a timing component. And let's get back to the record a little bit. I want to follow up on a couple of questions you asked. Because we asked the same question. So this conduct, you allege, took place over a six-year period. By its nature, this is, by the way, First Amendment. This is petitioning activity of the government. That's something we haven't touched upon. But, boy, it has been in the back of my mind as I've worked on this case that there certainly is a constitutional dimension here because petitioning is First Amendment activity. And should we, as a court, be concerned about some kind, either prior restraint or in some way inhibiting petitioning conduct by agency activity that is not bound by rules or predictable rules? Chief Judge Smith, Judge McKee went exactly where I was going to go. And this really comes off of your question about, well, what's the injunction look like? We are really talking about a prior restraint on constitutionally protected activity, even if we weren't. I mean, what you heard was an inability to articulate what the injunction would be. That wouldn't satisfy Rule 65. It would be void as indefinite. But here, where you have constitutionally protected speech at issue, it also is constitutionally infirm. It would be a prior restraint. But let's go back, if I may, to the earlier question you asked. Yes, well, this conduct, it was public. This was public petitioning. There were comments posted on the public record, often at the request of the FDA. Why didn't the FTC act more quickly? Well, I've got a couple answers to that. First, the answer you heard was, well, we didn't know what was going to happen until the FDA ruled. Well, we didn't brief and we're not appealing the North Pennington decision, but the standard there is it has to be objectively baseless. So if these petitions were actually objectively baseless, you don't need an expert agency, which wrestled with the issue for six years, to tell you that. You need to make that judgment yourself. But let's, in your words, Chief Judge Smith, let's spot them that. Let's just look at what happened after the citizen's petition decision was filed. And I do have the timeline because you can get it right out of their complaint. And this is at pages, in the appendix, 54 through 56. What you see is that they allege that the FDA decided the citizen's petition on April 9, 2012. You'll find that at appendix page 54. They then discuss litigation that Viropharma filed challenging that decision. And the litigation that Viropharma filed, they contend, is part of the pattern of anti-competitive conduct. So after the citizen's petition was filed, lawsuit was filed. That lawsuit wasn't decided until summary judgment was granted against Viropharma on January 9, 2013. You'll find that at appendix page 56. So there's that nine-month period. If they really had to wait until the FDA decided, and I don't accept that that's true, but accepting that is true for purposes of argument, they had nine months when the conduct continued. They read what the FDA said. If they thought that there was this abusive practice going on and they thought it continued with that litigation, they had nine months to go into court. Now, what you heard is that it takes time to investigate. Well, that's true. They investigated for five years. The fact that they investigated for five years and still can't point to any fact that would suggest that a violation is about to occur suggests to me they don't need discovery, that the fact doesn't exist, or they would have pled. But in any event, that nine months was more than enough time for them to institute a proceeding. In fact, often, and this goes really to why 13B exists in the first place, you go back to when the FTC Act was enacted in 1914, there's an express grant of authority to the FTC. The FTC had the ability to pursue administrative remedies, administrative proceeding. It could obtain a cease and desist order through those proceedings, and it could go to federal court and enforce that cease and desist order. And, in fact, if it did, there's a range of remedies that are specified, including that they could get from the federal court, including injunctive relief and other equitable relief. That other equitable relief, by the way, you won't find in 13B. That goes to a whole separate question about their assertion that they're entitled to seek money. But going back again, so this was 1914. And 1914 until the early 1970s, 1973, that's all they could do. But there was a criticism that Congress heard that FTC often couldn't act quickly enough. In fact, the administrative proceedings would not conclude before the harm was suffered. And so Congress, and you'll see this in the legislative history that we cite in our brief, and I'll note that the FTC doesn't have any contrary authority to point to, history to point to. But what you see there in the Senate report and in some of the FTC's own commentary is that the goal here, this really was a stopgap measure. This was intended for the FTC to put an end to conduct, excuse me, to put an end to conduct to avoid the aggregation of harm during the period it would take for the administrative proceedings to take place. And you see this in operation. I think it was you, Chief Judge Smith, forgive me if I've got that wrong, but the panel was asking about how the FTC traditionally has employed this authority. And again, they only have the authority that Congress grants to them. They have no more. Traditionally, in the competition context, they've used it to challenge mergers. And what you see there in Hershey Medical is a great example here that made its way up to this court and at least one member of this panel. But there was a challenge to a merger. There was an administrative proceeding brought in order to determine whether that merger was anti-competitive. But they also used the 13B authority to go into federal court to seek an injunction to prevent that merger from happening until the administrative proceeding could be completed. That is an appropriate use, in my opinion, of 13B. I would hazard a guess that that's what Congress had in mind back in 1973 when it adopted this very clear language. The plain language says, is or is about to. The structure of the statute really speaks to this. When it's past conduct, if you look at Section 5, it talks about an administrative proceeding based on past conduct. They can go in and get a cease and desist order. It's only when a violation is occurring or is about to occur that they come into 13B and for a very specified purpose. So if the FTC cannot use 13B in this situation, and you have a situation where a client or a drug company like yours commits this conduct, which they did in trying to oppose the generic drugs, what steps can the FTC take? If they can't use 13B and two years have passed, three years have passed, two or five to seven years now have passed, what steps can the FTC take? Judge Fischer, I'm very glad you asked that question. It's a great question. But in your question was an assumption that they couldn't use 13B, and that's not my position. They can use 13B when the facts support it. I understand that. If they're following viral form. To rephrase my question, assuming in a situation just like this, the conduct is over, there's no evidence that you've engaged in similar conduct in trying to protect another drug, and they have this alleged violation out there, and the FTC wants to take some steps against your client, what can they do? So, Judge Fischer, I think that the FTC argued this in their briefs. The FTC is not subject to, certainly when they're seeking a cease and desist order, they're not subject to a statute of limitations or a statute of repose. If they want to bring an enforcement action based upon past conduct, Section 5A expressly permits them to do that. They can obtain a cease and desist order. And if things change, and my client, they've got no reason to believe this, no basis for this, but if my client were to violate the law again, they could go into court with a cease and desist. But importantly, Judge Fischer, let me make two points. Embedded in that question is a concern about policy, and the law is very clear that policy doesn't override the express language of the statute. So you never get the policy if the language is clear as here. But to address the policy concern, it's really important to understand that not only does the FTC have other options, they can either bring a Part 3 proceeding under 5A, or they can bring a later 13B suit if they can actually plead facts, consistent with their Rule 8 obligations, among others, that a violation is or about to occur. But the FTC plays only one part in the overall enforcement scheme in the United States. The Department of Justice also has the ability to enforce the antitrust laws. You have state attorneys general who can and increasingly do bring actions. As I know, General Fischer, you were at once in that role. You had the ability to bring actions. And then there's very, very strong incentives for private parties to bring actions if they're harmed, if they have standing. Judge McKee, it's so they get trouble damaging their attorney's fees. And you could have competitors could bring actions. You could have consumers who bring class actions. And what's notable here, even though, again, these allegations of a six-plus-year pattern of open and notorious abuse, none of these private parties who had strong incentives brought suit. That goes more to the merits than anything else. But the point is that there are people. But this wouldn't even be appropriate now for a 5A. It may have been, you're saying, seven years or so ago, a 5A action would have been appropriate, but no longer. No, Judge McKee, I think, again, I think that the FTC could try to bring one today. A 5A now is these facts? There is no – well, setting aside the facts. I mean, setting aside the merits. You can't hope that they set the facts up. But that action has to be based on – they can bring an action based on a past violation. It's clear, again, in the plain language of the statute. If it appears likely to reoccur or something of that sort. Right. And I will say, you know, Your Honors, I didn't address directly your question about jurisdiction, and so I'm happy to do that. But I will say that, you know, the lack of facts here go not only to whether 13B is – the statute is jurisdictional, but there's a broader jurisdictional question here. I mean, is this – is there a case or controversy? And here's Chief Judge Smith, if you'll permit me to quote you. That's a dangerous practice. It really is, and probably not going to be very persuasive, either. You know, it's against my better judgment, perhaps. But I think Z.F. Meridor is a great touchpoint here, where the court said, a plaintiff must always demonstrate that a justiciable case or controversy exists sufficient to invoke the jurisdiction of the federal courts. Did you say that? You said that? He did. And so – and I think that's the point. Even – I do believe 13B is jurisdictional. It speaks directly to – if I understand – I understand ARBA and the cases that have interpreted it. But still, if it's not. But still, if it's not. I mean, that's the point, and I guess that's why – and I will also acknowledge that Judge Andrews was less than clear on this, and it's entirely possible he concluded – But 13B – and I can't – he didn't, he didn't whisper, but 13B wouldn't give you statutory standing unless you can satisfy the prerequisites of 13B. Absent that, then there's still no injury, is there? Well, I think that's right. I mean, 13B speaks to – unlike some of the other statutes cited in the jurisdictional case, it speaks directly to the FTC's authority to bring an action in federal court. It gives them statutory standing. And so it gives them statutory standing. Without the authority, they can't do it. And I know that counsel cited other provisions of the code, but really it's 13 – excuse me, it's – let me get my citation right, please. Yeah, it's 28 U.S.C. 1345 that talks about federal agencies only having the – the courts having jurisdiction over actions that federal agencies are exclusively authorized to bring. Now, FTC points to other jurisdictional statutes, federal question, questions over a competition law, but it's clear that before 13B was enacted, the FTC, as they've conceded in their papers, they didn't have the authority to do what they're trying to do now. It's – the real question is whether that vests them with the authority, and it has to be read in conjunction with 1345. If you also – if you look at the language of 13B, not only does it speak to what the FTC is authorized to do, but it speaks directly to what the courts may do. If you look at the language, it talks about the court may issue an injunction. The court may add parties regardless of venue provisions. So, I mean, again, you could quibble with the fact that the word jurisdiction doesn't appear in 13B, and maybe under ARBA that's a bright line that we can't cross, but it's hard for me to imagine a statute that's more jurisdictional than one that speaks directly to the agency's authority to invoke this court's jurisdiction and for this – and speaks directly to what this court may do. Thank you very much, Mr. Thank you, Your Honor. Mr. Hoffman, rebuttal. So, I'd like to start with the question of why are we here. And the reason that we, the agency, are here is because the court applied a standard which is at odds with the way that courts have interpreted the is-or-is-about-to language for decades, and that seriously threatens to undermine not just the FTC's enforcement efforts, but that of other agencies. But that's a bit too far. How does it seriously threaten to undermine when I think we all agree that there's nothing – they don't have any product right now that's getting to the point in time of development where it's going to be likely that if they had an intention to re-engage in this call-to-abuse behavior, they would do so. How does that happen? Because if the standard is imminent, that means that as soon as someone gets wind that the FTC or the SEC or some other government agency is investigating them – and this happens all the time in all sorts of cases – they can stop the conduct. And under the standard applied by the court, and under the standard advocated by, that means that we can't do anything. We have to wait until they're just about to do something again. We have to wait until something is really close to imminent. So the answer is, you know, unless someone is actually caught with their hand in the cookie jar, that means that the FTC can't bring an action. That is a big, big problem for the FTC. If you look at cases like Volkswagen, for example. Yeah, that's a bit different there. They mentioned that that really went to the problems with the car itself. Maybe I misunderstand the approval process, but if once they get it – the drug is not going to get to market until it gets through the necessary trials, and now it's released standard of the trials. If they were to go and try to start filing citizens' petitions again to defray any kind of generic competition, at that point you clearly could go in either for 13B or for 5A, couldn't you, and get a cease and desist order? If they were to file more citizens' petitions, in other words, if they were to start doing the conduct again, then we probably would wait and do what we did here, which is wait until the FTC had resolved those petitions because we don't want to – we have to allege they're objectively baseless, and if the FTC –  No, but here we're alleging that the old ones were objectively baseless. And you're alleging there's a likelihood they would do it again without any petition being filed, right? If they filed new ones, I assume we would wait until the FDA had ruled before filing another action. So we'd be in the same position that we're in now. Listen to what you're telling me. You're telling me that you would have to wait until they file a petition. After they file a petition, you have to wait to find out whether or not it's been determined to be baseless. That you couldn't do. But you can ask us to enjoin them from even filing something which may or may not be baseless. Do you have a problem with that? That's not what we're asking. If they file it, you've got to wait. Because if they don't file it, then you don't have to wait. I think you're mischaracterizing what I'm asking for. We're asking you to enjoin them from filing something that's baseless. We're not asking you to enjoin them from making filing. Well, how do you know it's baseless using your own analogy until it's gone through the process? Typically, if you go and get an opinion of counsel, and you have an outside counsel that determines this. Why couldn't you have done that before? You're saying before you had to wait until the determination was made that it's baseless. Well, the question is not what we have to do. The question is what they have to do. If they're subject to an injunction that prevents them from filing baseless litigation, they can very easily comply with that, and that should protect the public from the type of egregious misconduct that we saw here. What is going to protect the public or a citizen or a company from a very loose standard that would permit a government agency from becoming a roving commission that could file litigation without any evidence suggestive of any kind of imminency, any kind of proximity in time to an occurrence that might be violative of the act? What is to prevent a government agency from doing so for punitive purposes, just to harass an entity that had created problems for a government agency, even though they got another government agency previously? Well, so the answer is we are not proposing to read temporal limitations out of the statute, as Mr. Reed suggested. We're proposing that the court apply the same standard that's been applied in dozens of cases over the years. And, you know, as I mentioned, we've mentioned Judge Friendly's opinion in Commonwealth Chemical. We rely very heavily on that. I'd like to draw your attention to an earlier opinion in the Second Circuit, which is the Culpepper case. It's cited in our reply brief. It's 270 F. Second 241. And that deals with this same language. It says the commission, in that case the SEC, is authorized to bring an action in the district court to issue an injunction when it appears that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation. It is clear from the plain language of the act that the appellant's cessation of their legal activities prior to the commencement of this action would not preclude the issuance of an injunction. And it says that the critical question is whether there is a reasonable expectation of further violations. That's the standard that courts have always applied here. That's the standard Congress has understood this is or is about to language to mean when it enacted Section 13B. And that's the standard that courts have applied in Section 13B and SEC cases. So the critical question here is not the facts of this case, but the legal standard. And that's why we're here. And I just want to briefly mention the legislative history. No, I think we're well past the time allotted. Okay. Well, in that case, we'd ask that the judgment be reversed. Thank you very much, Your Honor. Thank you very much. We will take this case under advisement. Thank counsel for their helpful arguments and their helpful briefing of the case. And we'll take it back.